UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| MARY B.[1], | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   CIVIL NO. 1:21cv258 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI) under Title XVI of the Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

    1.    The claimant meets the insured status requirements of the Social Security Act

>   through December 31, 2024. (Exhibit B7D).

2. The claimant engaged in substantial gainful activity during the following periods: through March 25, 2019. (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

4. The claimant has the following severe impairments: degenerative disc disease of the cervical spine, status post fusion; tendinitis of the right shoulder; migraines; major depressive disorder, and generalized anxiety disorder. (20 CFR 404.1520(c) and 416.920(c)).

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

6. After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can never climb ladders, ropes, or scaffolds, or crawl; can occasionally reach overhead with the right, nondominant, upper extremity. Work with a moderate level of noise. With work that can be learned in thirty days or less, with simple routine tasks, and occasional interaction with coworkers and supervisors, and no interaction with the general public.

7. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8. The claimant was born on February 5, 1969 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

9. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding the claimant is "not disabled," whether or not the claimant has transferable job

>skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 5, 2019, the amended onset date, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17-26).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on February 14, 2022. On April 6, 2022 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on May 2, 2022. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present

case, Step 5 was the determinative inquiry.

Plaintiff was born on February 5, 1969, and was 50 years old at the date of alleged disability. (Tr. 15). She has a high school education and a driver's license. (Tr. 25, 50). The ALJ found that Plaintiff had received private disability benefits until March 2019, and that there has been a 12-month continuous timeframe where Plaintiff has not engaged in substantial gainful activity. (Tr. 18). Plaintiff is unable to perform any past relevant work, which includes work as a CNC machine operator, assembler wire harness, door frame assembler, food truck vendor/ prep cook, machine operator, filling operator, and foam machine operator. (Tr. 24-25).

In 2019 Plaintiff had a "right shoulder arthroscopic rotator cuff repair and right shoulder arthroscopic limited debridement." (Tr. 1456). In 2020 Plaintiff underwent a "right reverse total shoulder arthroplasty." (Tr. 1534). Regarding this surgery Ortho ONE noted, "She has new full-thickness rotator cuff tears along with glenohumeral arthritis. She has now had two failed rotator cuff surgeries. She has significant pain and problems with her shoulder consistent with rotator cuff arthropathy. She has tried injections and physical therapy in the past all of which have failed to alleviate her symptoms. We had a long discussion about treatment options, and she elected to proceed with right reverse total shoulder arthroplasty." *Id*.

Plaintiff also had carpal tunnel release surgery in 2019, as well as ulnar nerve transposition. (Tr. 1836-37). She has had three cervical fusions performed in 2007, 2013, and 2019. *Id*. She also had a posterior cervical laminectomy done in 2019. (Tr. 1837). Plaintiff also alleges that she suffers from fibromyalgia, hypertension, major depressive disorder, generalized anxiety, cyst of knee joint, heart murmur, thyroid disease, arthritis, failed neck syndrome, cervical facet arthropathy, chronic pain syndrome, thoracic radiculopathy, cervical radiculopathy,

5

degenerative disc disease, occipital neuralgia, lumbar facet arthropathy, leg swelling, rheumatism, shoulder impingement syndrome, migraines, tenosynovitis of left forearm, right chronic superior glenoid lesion, right shoulder rotator cuff tendonitis, right AC joint osteoarthritis, right rotator cuff tear, right wrist carpal tunnel syndrome, right wrist ulnar neuropathy, bursitis of left shoulder, primary osteoarthritis of the right knee, parathyroid adenoma, hyperparathyroidism, pseudoarthrosis cervical region, and cervical radiculitis.

In support of remand, Plaintiff first argues that the ALJ erred in her RFC assessment. Plaintiff contends that she had numerous weight lifting restrictions yet the ALJ failed to discuss how much weight Plaintiff could lift. Plaintiff asserts that she has very little strength in her right arm.

In October 2020 a Functional Capacity Evaluation was done by Jason Winegardner, PT. (Tr. 1835). In floor to waist lifting, Mr. Winegardner stated, "Client able to complete lift with 2.5 pounds without difficulty and with five pounds without observed difficulty except slight decrease in speed of movement but with reported 'pulling' on right shoulder. Client used a combination of bending and slight squat to reach object. Client requested to stop testing. Safe demonstrated limit floor to waist lifting is five pounds on a seldom basis or up to ten percent of the day." (Tr. 1843-44).

With respect to waist to shoulder lifting, Mr. Winegardner found, "Client completed lift through range with 2.5 pounds and then five pounds but with observed difficulty getting weight to shoulder level. Evaluator and patient elected to stop testing. Safe demonstrated limit waist to shoulder lifting is 2.5 pounds on an occasional basis or up to one-third of the day. Shoulder to overhead lifting - Not attempted due to results of range of motion testing and repetitive overhead

6

reach testing. Client not safe to complete. Safe demonstrated limit shoulder to overhead movement, never on a repetitive basis in a competitive work environment." (Tr. 1844).

Mr. Winegardner further found a safe demonstrated limit for carrying was, "Five pounds on an occasional basis or up to one-third of the day." (Tr. 1844). With respect to pushing, Mr. Winegardner noted, "Client through a succession of 30-foot push tests, was determined to have the ability to push with ten pounds of force on an occasional basis or up to one-third of the day. Client able to pull with a force of 15 pounds for 30 feet but with mild observed difficulty and decreased speed. Attempted to push cart requiring 20 pounds of force but was unable." *Id*. With respect to pulling, Mr. Winegardner stated, "Client, through two trials, was determined not safe to pull in a work environment. Pulling - never on a repetitive basis in a competitive work environment." *Id*.

With respect to the sit-to-stand functional strength test, Mr. Winegardner stated, "Patient is demonstrating a significant loss of functional strength." (Tr. 1841). With respect to posture, Mr. Winegardner noted, "Significant abdominal distension, increased cervical lordosis, increased lumbar lordosis, bilateral shoulder internal rotation positioning instead of neutral, elevated scapulae right greater than left, bilateral knee hyperextension, severe forward head, and neutral hip rotation. Thus, significant postural abnormalities are present." *Id*.

With respect to palpation, the evaluation states, "Bilateral severe hypertonicity and trigger point activity at bilateral upper trapezius with point tenderness. Moderate tenderness at rhomboids with severe hypertonicity right and moderate on left. Tender at right lateral shoulder. Tender along suboccipitals at cervical spine but no hypertonicity noted." *Id*.

With respect to special tests, Mr. Winegardner states, "Slight decrease in end range right

upper scapular rotation with shoulder flexion. Scapular kinematics are slightly abnormal due to altered muscular tone in scapular musculature." *Id*. Plaintiff's gait speed and walk test were noted as lower than the norm for her age and gender. (Tr. 1842). Mr. Winegardner stated "Never on a repetitive basis in a competitive work environment" for "shoulder to overhead lifting," "pulling," "ladders," "crouching," "crawling," "above shoulder work," and "firm grasping." (Tr.1847-48). At the end of the evaluation Mr. Winegardner stated, "Work restrictions be set in line with safe demonstrated abilities as determined by Functional Capacity Evaluation. Do not recommend pursuit of competitive employment." (Tr. 1848).

Plaintiff points out that the ALJ did not discuss any of the limitations given by multiple physicians and medical providers at Ortho ONE, nor did the ALJ discuss the Functional Capacity Evaluation done by physical therapist Mr. Winegardner. The ALJ notes only that "[i]nto 2019, [Plaintiff] had a normal range of motion, intact pulses, no atrophy, a stable gait, and imaging of the shoulder showed only a tiny calcification lateral to the humeral head, cartilage loss, and tendinopathy without tearing. Imaging of her spine showed she had a stable cervical fusion with no worsening; although she retained central canal stenosis, hypertrophic facet arthropathy, periarticular edema, and mild disc bulging and spurring. As noted above, her complaints did not prevent her from earnings over substantial gainful activity levels during 2018 into early 2019, despite her allegations, and is not more limited than accommodated within the residual functional capacity." (Tr. 22). Plaintiff contends that this is a very broad over-generalization of the record throughout the end of 2018 and into 2020. Plaintiff also points out that the only reason she was able to earn over "substantial gainful activity" levels during this time was due to the many work restrictions the physicians placed her on.

8

The Commissioner acknowledges that the ALJ failed to discuss Mr. Winegardner's opinion, but claims that the error is harmless as Mr. Winegardner was a one-time examiner who saw Plaintiff for the first and only time a few days before the administrative hearing.

This Court finds that remand is appropriate so that the ALJ can fully consider Plaintiff's many restrictions and also evaluate Mr. Winegardner's opinion regarding Plaintiff's limitations.

Next, Plaintiff argues that the ALJ erred in her evaluation of the consultative physician's opinion. The ALJ found that the opinion of consultative physician Dr. Bakht Nishan that Plaintiff cannot carry twenty pounds or lift ten pounds overhead is not "consistent with or supported by the record," further stating, "no treating source offered such significant restrictions." (Tr. 24). However, there are numerous weight lifting restrictions throughout this record that were never discussed by the ALJ. The consultative examiner's evaluation was in November of 2019. (Tr. 1221). Between December 2018 and October 2020, there are twelve medical restrictions noted regarding weight limitations in various forms, with the most recent and most extreme being no lifting over five pounds. (Tr. 652, 591, 600, 605, 610, 625, 628, 1214, 1456, 1517, 1531, 1844). The majority of these restrictions are coming from Ortho ONE Northeast, with the final restriction in October of 2020 coming from a Functional Capacity Evaluation done by physical therapist Jason Winegardner. *Id*. Plaintiff contends that all of these opinions, which the ALJ overlooked, are consistent with and supported by Dr. Nishan's restrictions.

The ALJ states that Dr. Nishan rated Plaintiff's muscle strength at 5/5 and thus is not consistent with a weight lifting restriction. (Tr. 24). Plaintiff notes, however, that simply because a patient has the muscle strength does not mean that the patient is capable of using that strength, as is clear by the many restrictions Plaintiff has been given throughout the record. In Plaintiff's

9

situation the issue is not her muscle strength being insufficient, but the ability to use her shoulder.

At the conclusion of the evaluation Dr. Nishan states, "Patient has restricted range of motion of cervical flexion/extension/rotation. Also restricted range of motion of right shoulder abduction and forward elevation. Restricted range of motion of lumbar and bilateral knee flexion, also noted history of arthritis and degenerative disc disease." (Tr. 1227).

This Court agrees with Plaintiff that the ALJ did not properly evaluate Dr. Nishan's opinion. The ALJ found Dr. Nishan's opinion not consistent with the rest of the record, but the ALJ failed to review the full record. Dr. Nishan's limitations were consistent with the many restrictions found throughout the record. Furthermore, Dr. Nishan is a consultative physician and unlikely to exaggerate Plaintiff's disability.

The Commissioner argues that no treating source had opined that Plaintiff was a limited as Dr. Nishan opined. However, the Commissioner has failed to address the numerous opinions in the record regarding Plaintiff's limitations. Therefore, remand is warranted on this issue.

Next, Plaintiff argues that the ALJ failed to discuss Plaintiff's thyroid impairments and also failed to consider the combination of impairments. The ALJ did not discuss Plaintiff's thyroid problem at all, nor did the ALJ account for any limitations for thyroid disease in the RFC, or consider it in combination with Plaintiff's many other limitations. An ALJ must consider the combination of impairments. 20 C.F.R. §§ 404.1520, 416.920. In *Martinez v. Astrue* the Seventh Circuit stated, "Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might well be totally disabling." *Martinez v. Astrue*, 630 F. 3d 693, 698 (7th Cir. 2011). In *Thomas v. Colvin*, the Seventh Circuit stated that the claimant's combination of impairments "could impose greater restrictions" than any one of the impairments.

10

*Thomas v. Colvin*, 745 F. 3d 802, 807 (7th Cir. 2014). The case was remanded with the Court finding that an "accurate and logical bridge" could not be built between evidence and conclusion when there was no evidence the ALJ considered the impairments in concert. *Id*.

      In the present case, at the hearing, Plaintiff discussed her thyroid issues and stated that it caused her to be tired all the time. (Tr. 59). Plaintiff testified that the fatigue has gotten worse in the past four years. *Id.* In 2015 Plaintiff's thyroid disease was diagnosed and it was speculated by her physicians that her dentures may have been required due to a parathyroid issue. (Tr. 1160). Additionally, parathyroid adenoma was diagnosed and Dr. Moreno stated, "We will have to be careful here. If the bones of neck are being affected by the parathyroid issues, then surgery may actually not help. We may have to correct the parathyroid issues first." (Tr. 1164). In 2018 thyroid imaging showed "characteristics consistent with a cyst." (Tr. 435). In April 2019 fatigue is noted and thyroid surgery is discussed, but it was canceled due to Plaintiff's neck surgery. (Tr. 553). The record states a second opinion was needed on the thyroid levels. *Id*.

      Additionally, Plaintiff suffers from fibromyalgia and testified that as a result she "hurts all the time." (Tr. 56). She stated, "If you touch my leg or something like that it hurts." *Id*. Plaintiff additionally testified that she suffers from migraines, and gets them a couple times a month with each one lasting three to four hours. (Tr. 57). Plaintiff has also had three neck surgeries due to a herniated disc, with chronic pain and inflammation down her neck. (Tr. 54). She stated that she is in pain if she looks down for too long. (Tr. 64). Plaintiff was assessed with "failed neck syndrome" by the Pain Management Clinic. (Tr. 1870). The Pain Management Clinic has also regularly noted "tenderness" in all areas of the cervical spine, back, and shoulder area. (Tr. 1866). Plaintiff is additionally ANA positive which led to the fibromyalgia diagnosis. (Tr. 746).

As discussed above, Plaintiff has significant illnesses and limitations with her back, neck and shoulder. These limitations that are exacerbated by the fatigue she suffers as a result of her thyroid issue. This thyroid issue and fatigue should have been considered by the ALJ, and considered in combination with all other medical limitations. Thus remand is required so that the ALJ can properly evaluate Plaintiff's thyroid impairments and also properly consider the limitations arising from Plaintiff's combination of impairments.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: May 6, 2022.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court